CAMILLE LAVINGTON, Appellant, v ROBERT L. EDGELL, Respondent.

First Department, March 17, 1987

### APPEARANCES OF COUNSEL

*Michael S. Devorkin* of counsel *(James I. Serota* with him on the brief; *Levitsky & Serota* and *John Doar,* attorneys), for appellant.

*Patricia M. Hynes* of counsel *(Jeremy Heisler* and *Virginia A. LoPreto* with her on the brief; *Milberg Weiss Bershad Specthrie & Lerach,* attorneys), for respondent.

### OPINION OF THE COURT

Asch, J.

The parties herein entered into a separation agreement which was later incorporated but not merged into a divorce decree. Among the provisions of the agreement, the defendant husband agreed to pay maintenance to the wife for a set period "[s]o long as the Wife shall not be in default" under the agreement. In addition, provision was made for the wife to occupy the marital residence, apartment 29A at 160 East 38th Street in Manhattan. Recognizing that it represented a potentially valuable asset upon conversion to cooperative ownership, the parties agreed to purchase the apartment jointly by depositing 50% of the offering purchase price in cash with an escrowee, the wife's attorneys, when ownership interests were offered. Only in the event either of the parties did not deposit his or her share of the purchase price with the escrowee, would the other party then have the option of purchasing the apartment in his or her sole name. The wife received the "black book" or offering plan sometime in June 1981. The husband was not sent a copy and the wife did not forward this information to him. Receiving amendments to the plan that year and during 1982, the wife also did not transmit them to the husband or even to her attorney-escrowee. She did, however, forward rental bills received at the apartment to him at his office between February and May 1981 and returned other bills addressed to him to the post office.

In December 1981, the wife notified the sponsor that she was purchasing the apartment and represented that she had

"the option to buy legally this apartment with no other partner". Without compliance with the provisions of the agreement requiring all cash payment and notice to at least the escrowee of the existence of the offering, the wife purchased the apartment in her sole name on May 20, 1982, by a down payment, availing herself of sponsor financing for the balance. The husband learned of the purchase for the first time in June 1983 and ceased making maintenance payments after July 1983 on the ground that the wife was in default under the agreement and, therefore, his obligation for such payments ceased, pursuant to the terms of the agreement.

The wife thereupon commenced this action seeking her monthly maintenance payments and counsel fees. The husband, *inter alia,* asserted the wife's default as an affirmative defense and counterclaimed for specific performance on the terms of the separation agreement concerning the purchase of the cooperative apartment. After a nonjury trial, Trial Term granted the defendant husband's request for specific performance, directing the sale of the apartment on the open market with the defendant to receive 50% of the net proceeds. It refused to give the wife any credit for the down payment, purchase-money mortgage or interest payments she had made on the mortgage between May 1982 and December 1985. The court also found that the husband's obligation to pay maintenance to the wife had terminated upon her default in depositing her half of the purchase price for the apartment with the escrow agent, which was required by the separation agreement to be accomplished, at the latest, two weeks before the expiration of the sponsor's offer—May 6, 1982. Her failure to give notice to the husband of the effectiveness of the plan between June 15, 1981 and May 20, 1982 was held not to terminate his obligation to pay maintenance, since such failure was not "a default under this agreement" but a breach of obligations arising out of operation of law. Thus, Trial Term dismissed the complaint and ordered plaintiff to repay the maintenance she had received between May 6, 1982 and June 1983, at which time the husband had stopped further payments.

We agree with Trial Term that although the agreement did not expressly require either party to notify the other that the apartment was for sale, plaintiff's course of conduct as demonstrated at trial, in affirmatively depriving defendant of any information about the apartment conversion, violated her implied covenant of good faith and fair dealing *(see, Van*

*Valkenburgh, Nooger & Neville v Hayden Publ. Co.*, 30 NY2d 34, 45). Even assuming, arguendo, that there was no duty to notify the husband, the record shows that the wife intercepted the initial offering plan and the first amendment, which were addressed exclusively to the husband as the sole tenant of record at that time, and, thus, clearly violated the elementary duty not to hinder or obstruct the performance of the other party to the contract *(Grad v Roberts,* 14 NY2d 70, 75).

Although plaintiff asserts the trial court improperly awarded defendant equitable relief on a tort theory of mail interception, the husband's counterclaim alleged that plaintiff secretly purchased the apartment, avoided giving him notice and deprived him of the opportunity to exercise his rights under the separation agreement. This, by itself, sufficiently alleged breach of the covenant of good faith, a contractual claim, and allowed her to prepare a defense to the claim that she affirmatively deprived the husband of notice. Further, the trial court's references to the wife's breaches of Federal law concerning interception of United States mail addressed to others (18 USC § 1702) and to New York law with respect to tampering with sealed private communications (Penal Law § 250.25) were intended solely to demonstrate the extent to which the plaintiff violated her good-faith obligation, not to establish any separate tort liability.

We disagree, however, with the sweeping relief accorded defendant by the trial court. Defendant should not have been afforded specific performance of the agreement together with a termination of his maintenance obligations. The contract language providing for payment of the maintenance "so long as the Wife shall not be in default under this Agreement" solely suspended the husband's obligation during the period of default, but did not permanently extinguish that obligation upon correction of the default. Thus, since the husband has obtained specific performance of the wife's obligations under the agreement, he has been made whole. To require the wife to permanently relinquish her right to maintenance as well, would be to impose an unconscionable penalty upon her beyond any legitimate measure of damages the defendant husband suffered or would expect to suffer from a default at the time the parties entered into the separation agreement *(see, Truck Rent-A-Center v Puritan Farms 2nd,* 41 NY2d 420, 425). We therefore reverse those portions of the judgment dismissing the complaint and awarding the husband any maintenance payments paid by him to plaintiff after May 6,

1982 and grant plaintiff judgment on the complaint for any unpaid maintenance due after that date.

Likewise, Trial Term erred in not crediting the wife with the amount she advanced as a down payment on the apartment before awarding the husband 50% of the net proceeds of the sale. However, the wife properly is not entitled to any credit for interest payments on the purchase-money mortgage since the agreement which she breached required an all cash payment by her into escrow. The loan also allowed her to retain the equivalent funds in her own possession for the last 4½ years, while she no doubt deducted such interest payments on her tax returns.

Although we award the wife maintenance payments, she is not entitled to attorney fees pursuant to the separation agreement. The wife was in default of the agreement by breaching the covenant of good faith and fair dealing in affirmatively depriving the husband of notice and an opportunity to purchase one half of the subject apartment. This default justified the suspension of maintenance payments by the husband and, therefore, attorney fees and other expenses are not recoverable by the wife pursuant to paragraph 9 of the separation agreement.

Accordingly, the judgment of the Supreme Court, New York County (John D. Doyle, J.), entered January 23, 1986, after a nonjury trial, which, *inter alia,* dismissed the amended complaint seeking payment of maintenance; granted defendant's motion to conform his pleadings to the proof; awarded defendant restitution for maintenance payments made by him to plaintiff between May 6, 1982 and June 1983; granted defendant's demand for specific performance of the parties' agreement regarding the sale of the cooperative apartment No. 29A located at 160 East 38th Street in Manhattan with 50% of the net proceeds of the sale to be distributed to him, should be modified, on the law and facts, to the extent of reinstating the amended complaint and awarding plaintiff judgment thereon for any unpaid maintenance due under the agreement; vacating decretal paragraph 3 (b) to the extent it directs restitution by the plaintiff of maintenance paid by defendant between May 6, 1982 and June 1983; directing that plaintiff be credited with the amount advanced by her as a down payment for the purchase of the cooperative apartment in calculating the net proceeds from the sale of the apartment, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., SANDLER, CARRO and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 23, 1986, unanimously modified, on the law and the facts, to the extent of reinstating the amended complaint and awarding plaintiff judgment thereon for any unpaid maintenance due under the agreement; vacating decretal paragraph 3 (b) to the extent it directs restitution by the plaintiff of maintenance paid by defendant from May 6, 1982 through June 30, 1983; directing that plaintiff be credited with the amount advanced by her as a down payment for the purchase of the cooperative apartment in calculating the net proceeds from the sale of the apartment, and otherwise affirmed, without costs and without disbursements.